Argued and submitted December 13, 1995, remanded for reconsideration
April 17, 1996

In the Matter of the Compensation of
Leota J. Doolittle, Claimant.

SAIF CORPORATION,
*Petitioner,*

*and*

FEATHER MERCHANT PET SHOP,
*Employer,*

*v.*

Leota J. DOOLITTLE,
*Respondent.*

(94-03703; CA A88667)

914 P2d 1112

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert L. Ackerman argued the cause for respondent. With him on the brief was Ackerman, DeWenter & Huntsberger, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

SAIF seeks review of an order of the Workers' Compensation Board, contending that the Board erred in calculating claimant's unscheduled permanent partial disability, because it did not use the Dictionary of Occupational Titles (DOT) code that most accurately describes claimant's job at the time of injury. We remand for reconsideration.

Claimant worked in a pet store. She compensably injured her upper back while moving boxes of aquarium rock. Her claim was closed with an award of 26 percent unscheduled permanent partial disability (PPD). Claimant requested reconsideration. After examination by a medical arbiter, an Order on Reconsideration reduced her PPD to 17 percent. Claimant requested a hearing, seeking to increase her PPD award.

At the hearing, the parties stipulated to the rating factors for age, education and impairment. With respect to the final factor—adaptability—they stipulated that her residual functional capacity is "light." The only issue in contention was the strength requirement of her job at the time of injury. The administrative law judge (ALJ) determined that claimant's duties involved most aspects of operating a retail pet shop that sells fish and birds, related equipment such as tanks and cages, food for dogs, cats and birds, and portable dog kennels. She found that

> "[claimant] would clean the fish tanks and bird cages to include disinfecting the bird cups. Claimant would wait on customers and ring up sales. Between customers claimant would help stock the shelves and aisles with merchandise. Finally, claimant would help clean the store by vacuuming and dusting. To accomplish the cleaning and stocking aspects of her job, claimant would have to lift/carry fish tanks, bird cages, dog kennels, and pet food sacks on *an occasional basis*." (Emphasis supplied.)

The ALJ concluded that "the DOT code that most closely describes claimant's prior work is pet and pet supplies salesperson (DOT # 277.357-042)[, which] requires the physical

capacity to perform light work," and left undisturbed the award of 17 percent PPD.[1]

The Board adopted the ALJ's findings but made the following additional findings in the section of its order denominated "Conclusions of Law and Opinion":

> "Particularly, we note that *a significant portion of claimant's work involved lifting heavy equipment and stock.* We find that *this activity was more than an incidental part of claimant's work.* [Citation omitted.] Further, we find that, although several of the work duties of Pet and Pet Supplies Salesperson DOT code apply to claimant, we find that code inapplicable to this case, because it assumes that the salesperson's duties require only light strength. On this record, *we find that claimant's at-injury job required more than light strength on a relatively routine basis.* In making this finding, we have relied on claimant's essentially unrebutted testimony concerning her lifting and cleaning responsibilities." (Emphasis supplied.)

The Board concluded that, although claimant's job at the time of the injury involved some work in the "light" category, "the medium strength DOT code for Pet Shop Attendant (retail trade) more accurately describes that job."[2] It calculated claimant's PPD at 29 percent.

---

[1] DOT # 277.357-042, SALESPERSON, PETS AND PET SUPPLIES (retail trade):

"Sells pets and pet accessories, equipment, food and remedies: Advises customer on care, training, feeding, living habits, and characteristics of pets, such as dogs, cats, birds, fish, and hamsters. Explains use of equipment, such as aquarium pumps and filters. Feeds and provides water for pets. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May clean cages and tanks. May suggest remedies for certain animal diseases or recommend services of VETERINARIAN (medical ser.)."

The Salesperson "Master Title" provides that any salesperson performs the following generic tasks:

"Sells merchandise to individuals in store or showroom, utilizing knowledge of products sold: Greets customer on sales floor and ascertains make, type, and quality of merchandise desired. Displays merchandise, suggests selections that meet customer's needs, and emphasizes selling points of article, such as quality and utility. Prepares sales slip or sales contract. Receives payment or obtains credit authorization. Places new merchandise on display. May wrap merchandise for customer. May take inventory of stock. May requisition merchandise from stockroom. May visit customer's home by appointment to sell merchandise on shop-at-home basis. Classifications are made according to products sold[.]"

[2] Pet Shop Attendant (retail trade), a specified alternate title included within DOT # 410.674-010, Animal Caretaker, is described as follows:

On review, SAIF contends that the Board erred as a matter of law, because it calculated claimant's PPD award "in a manner that did not comply with the requirements of [*former* OAR 436-35-310 (1993)]," entitled "Adaptability to Perform a Given Job." Claimant responds that there is substantial evidence in the record to support the Board's conclusion regarding claimant's job-strength requirement at the time of injury and that the Board correctly applied the rule to calculate the adaptability factor.

The adaptability factor is based on "a comparison of the highest prior strength (physical demand)" and a claimant's residual functional capacity at the time of determination. Prior strength is based either on the jobs the worker has performed "during the last ten years preceding the time of determination," or "on the worker's job at time of injury." In claimant's case, the comparison was to be based on her job at the time of injury. *Former* OAR 436-35-310(1)(a), (b) (1993). The term "strength" is defined by OAR 436-35-270(3)(g):

> " 'Strength' means the physical demands of each job as described by the SCODDOT. Prior strength (physical demand) shall be derived from the strength category assigned in the DOT for the worker's job at injury. For the purposes of these rules, 'occasionally' means the activity or condition exists up to 1/3 of the time, 'frequently' means the activity or condition exists from 1/3 up to 2/3 of the time, and 'constantly' means the activity or condition exists 2/3 or more of the time."

Light work is defined as "Lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds," while medium work is defined as "Lifting 50 pounds

---

"Performs any combination of the following duties to attend animals, such as mice, canaries, guinea pigs, mink, dogs, and monkeys, on farms and in facilities, such as kennels, pounds, hospitals, and laboratories: Feeds and waters animals according to schedules. Cleans and disinfects cages, pens, and yards and sterilizes laboratory equipment and surgical instruments. Examines animals for signs of illness and treats them according to instructions. Transfers animals between quarters. Adjusts controls to regulate temperature and humidity of animals' quarters. Records information according to instructions, such as genealogy, diet, weight, medications, food intake, and license number. Anesthetizes, inoculates, shaves, bathes, clips, and grooms animals. Repairs cages, pens, or fenced yards. May kill and skin animals, such as fox and rabbit, and pack pelts in crates. May be designated according to place worked such as * * * Pet Shop Attendant (retail trade)[.]"

maximum with frequent lifting and/or carrying of objects weighing up to 25 pounds." OAR 436-35-270(3)(g)(B), (C).

In this case, the Board adopted the ALJ's finding that claimant lifted up to 50 pounds only on "an occasional basis." However, the Board also noted that "a significant portion of claimant's work involved lifting heavy equipment" and found that that activity "was more than an incidental part of claimant's work" and that her "at-injury job required more than light strength on a relatively routine basis." Regardless of the standard of review, we cannot discern whether the inconsistencies in the Board's findings are intentional or an oversight, or whether the Board might be able to reconcile them. Until the Board has resolved them, and has explained how its findings lead to its conclusion, we are unable to review its order. *Furnish v. Montavilla Lumber Co.*, 124 Or App 622, 625, 863 P2d 524 (1993). Consequently, we remand.

Remanded for reconsideration.